Filed 4/27/26  In re Skyla H. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SKYLA H., a Person Coming Under the Juvenile Court Law. | B343672 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LARRY H.,<br><br>Objector and Appellant. | (Los Angeles County Super. Ct. No. 22LJJP00497A) |

APPEAL from an order of the Superior Court of Los Angeles County, Jennifer W. Baronoff, Juvenile Court Referee. Conditionally affirmed and remanded.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Objector and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Larry H. (Father) appeals from an order of the juvenile court, asserting that before the court established that Father's sister would be the legal guardian of his daughter Skyla, the Department of Children and Family Services (Department) failed to interview any of Skyla's maternal relatives besides Brittany T. (Mother) about possible Native American ancestry. We agree the Department's investigation was insufficient to satisfy the requirements of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.[1]), and remand for further investigation.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Procedural History*

The juvenile court asserted dependency jurisdiction over Skyla after sustaining allegations under section 300, subdivisions (a) and (b), that Father and Mother had a history of engaging in violent altercations in the presence of Skyla that placed her at substantial risk of serious physical harm. The court ordered Skyla removed from both parents and granted them reunification services. The court terminated the parents' reunification services after 18 months following its determination the parents had not been truthful with the Department or the court and were still a couple. The court ordered the permanent plan of legal guardianship with paternal aunt Alisha H. and terminated dependency jurisdiction with Kin-GAP funding. Father timely appealed from the order establishing the guardianship of Skyla.

---

[1]     Undesignated references are to the Welfare and Institutions Code.

B.      *ICWA Investigation*

At the initial hearing on November 10, 2022, Mother and Father each submitted an ICWA-020 form indicating they had no Indian ancestry. The court asked Alisha, who was present in court, if she knew if any family members had Native American ancestry. She denied any such knowledge. The court found it had no reason to believe ICWA applied but ordered the Department to continue efforts to investigate possible Indian heritage on both the maternal and the paternal sides of the family and to provide the information for the next hearing. During the hearing, when Mother's counsel requested release of the child to Mother, he indicated Mother "currently lives with the maternal grandparents."

In the report for the jurisdiction hearing, the Department stated both paternal grandparents had been interviewed and denied Indian ancestry on either side of the paternal family. In addition, on November 15, 2022, Mother reported that she had no knowledge of Indian ancestry. When the Department's investigator requested contact information for any maternal or paternal relatives so that he could inquire about possible Indian ancestry, Mother "reported that she is not in contact with any of her family members and does not have contact information for family." Mother provided her biological mother's name (Shannon T.), but Mother indicated she had been placed in foster care at age two or three. She had six siblings. She and her older sister Nicole were adopted by maternal aunt Linda C., who then relinquished them due to health issues. Mother went to live in a group home and was then adopted by the group home manager, Brianna W., but Mother ran away in the 11th grade.

3

During the jurisdiction hearing, the court noted both paternal grandparents had denied Indian ancestry and another paternal aunt Larresha had also denied such ancestry. The court also noted Mother's statement that she was not in contact with any of her own family members. The court stated the Department had an ongoing obligation to interview any other relatives and specifically ordered the Department to follow up and ask paternal aunt Alisha about Indian ancestry and provide that information in the next report.

In January 2023 Mother stated she did not want to bring anyone to support her at a Child and Family Team (CFT) meeting. But Mother expressed a desire to rebuild her relationships with her family. In February and March, Mother reported she had been staying "with her sister in Monrovia." Around this time, Father reported that when he was not in Las Vegas, he also stayed with Mother's sister. In April, another social worker recently assigned to the case "requested to meet with the mother at her current home address and asked for her updated home address. Mother stated that she is currently residing with someone in Monrovia who may not feel comfortable with a social worker coming to her home at this time. Mother stated that she would prefer to meet with CSW in the office." In May, Mother reported she was still living with her sister, but she would not allow the Department to conduct a home assessment so that the court could determine if overnight visits with Skyla were possible.

At the contested review hearing on March 28, 2024, Mother testified that although Father had previously kept her isolated from her sisters and her "mom," she had rekindled her relationship with them. She indicated she had broken up with

4

Father[2] and that her sisters and her foster mom were there to support her, and her "mom" was providing financial support. Under questioning from the court, Mother indicated she had been embarrassed to tell her family about the Department's involvement because she and her sisters grew up in foster care and she did not want them to judge her. But Mother said the paternal grandmother had called her family and told them Skyla had been detained. Mother's sister then called Mother to ask what happened, and Mother said the two began talking every day.

At the section 366.22 hearing on June 10, 2024, the court ordered the Department to interview all known relatives and close contacts regarding possible Native ancestry and to include the interviews and an "ICWA summary" in the report for the selection and implementation (section 366.26) hearing. In its next report, the Department stated that on September 20, 2024, paternal aunt Alisha indicated "the child has not had any extensive contact with the maternal family. [Alisha] reported she has never met anyone from the maternal side."

At the initial section 366.26 hearing on October 8, 2024, the court indicated, "I also need to know that all known relatives have been interviewed with regard to ICWA. I did see in the ICWA section that it seems that the same three relatives—well, including the parents, were just interviewed multiple times, and

---

[2] At the conclusion of the hearing the court found Mother was not credible and had "lied to the court" during her testimony, given other evidence that Mother and Father were still together, and the court was "thoroughly confused at what is actually the truth."

I know that Skyla does have extended family. So I need to make sure that a more extensive ICWA inquiry is done."

A supplemental report included additional ICWA interviews or attempts by the dependency investigator on November 19, 2024. Both paternal grandparents again denied any Native American or Alaskan American heritage; the paternal grandfather reported that he heard his mother was Creole but did not have any additional information regarding her ancestry. He also denied there was anyone else who could provide additional information. Alisha stated the paternal family is "definitely not Native American nor Alaskan American. There is no one else who you can speak to about this." The investigator attempted to call Mother, but she did not answer, and the investigator left a detailed message requesting a call back. A separate report stated that on November 20, 2024, Mother again told a different social worker she had no knowledge of or information about Native American ancestry in the family. The same report indicated that during a visit between Mother and the child, "Mother called [maternal grandmother] and had the child say thank you for the toys she sent the child." A final report dated January 16, 2025 indicated the Department had not learned any new information related to ICWA. The court did not make any further findings or orders relating to ICWA.

## DISCUSSION

A. *Applicable ICWA Standards*

Under section 224.2, the juvenile court and the Department have " 'an affirmative and continuing duty' " in dependency proceedings to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (*In re Claudia R.*

6

(2025) 115 Cal.App.5th 76, 84; see § 224.2, subds. (a), (b).) "[O]nce a child is placed into the temporary custody of a 'county welfare department,' the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*In re Claudia R.*, at pp. 84-85.) "An 'extended family member,' if not defined by the law or custom of the child's Indian tribe, includes 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*Id.* at p. 85, citing 25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c).) "[S]ection 224.2 'does not require the [Department] to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140.)

If the court finds the Department has exercised due diligence and made a proper and adequate inquiry and there is no reason to know the child is an Indian child, "the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C., supra,* 16 Cal.5th at p. 1141.)

7

B.   *Substantial Evidence Does Not Support the Juvenile Court's Implied Finding That the Department's ICWA Inquiry Was Adequate and Duly Diligent*

Father does not challenge the sufficiency of the ICWA investigation regarding his side of the family; rather, he challenges only the sufficiency of the ICWA investigation of Skyla's family on the maternal side.  He asserts that the matter must be remanded for further investigation because the Department interviewed Mother alone regarding the possibility of Indian ancestry on her side of the family.  The Department counters that because Mother stated she did not have contact information for any of her family members and no maternal relatives came to court, there were no maternal relatives who were reasonably available to be interviewed by the Department.  Accordingly, the Department asserts the Department's investigation was sufficient.  We agree with Father that the Department was required to do more, given the circumstances in this case, as part of its continuing duty to inquire whether Skyla could be an Indian child.

"Where . . . a parent largely fails to cooperate with [the Department] or to provide names and contact information for extended family members, [the Department's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained.  Although it is well established that the duty to develop information bearing on whether a child is an Indian child 'rests with the court and the Department, not the parents or members of the parents' families' [citation], in most cases the court and [the Department] cannot satisfy this duty without the participation of the parents.  While . . . it [is] reasonable in many

8

cases to require [the Department] to follow up on leads provided by the parents, we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082; see *In re A.M.* (2020) 47 Cal.App.5th 303, 323 [child protective agency is not required to " 'cast about' for investigative leads"].)

The Department could not force Mother to divulge family information, and it was not required to undertake exhaustive investigative searches for her relatives. However, it did not satisfy its continuing duty to inquire about possible Indian ancestry by making a single unsuccessful request of Mother at the outset of the case for contact information for her relatives, given Mother subsequently informed the Department that she was in frequent contact with some of her relatives. For instance, Mother told caseworkers that she was living with her sister in Monrovia. While Mother refused to give out the sister's address when the Department wanted to assess the home, there is no showing that the Department asked Mother for her sister's phone number or email address so it could inquire about possible Indian ancestry.

Similarly, Mother plainly was in contact with someone she considered her "mom" and a maternal grandmother to Skyla during the dependency proceedings. (It is unclear whether this was her biological or adoptive mother, or whether she was referring to both at different times.) At the initial juvenile court hearing in November 2022, Mother's counsel represented Mother was staying with the maternal grandparents; Mother later testified in March 2024 she had rekindled her relationship with her sisters and her "mom"; and in November 2024 she was on the

phone with the "maternal grandmother" during a visit monitored by a Department aide, thanking her for sending a gift for Skyla. The record does not show the Department asked Mother for this individual's contact information or attempted to contact her. (See *In re Claudia R.*, *supra*, 115 Cal.App.5th at p. 81 ["The Department . . . should have asked Father and the paternal grandmother for the paternal grandfather's contact information, and if the Department obtained this information, it should have attempted to reach him."].)

Instead of just asking Mother repeatedly over the life of the case whether she had Indian ancestry, the Department should have asked her about other family members to interview. Particularly given Mother was not raised by her biological family and no other maternal relatives had provided information, this small extra step was necessary for a meaningful investigation into whether Skyla could have Indian ancestry on the maternal side of her family. (See *In re Dezi C.*, *supra,* 16 Cal.5th at p. 1139 ["Recognizing that parents may not be the best source of information about a child's Indian ancestry, the Legislature expressly mandated that, from the outset, child protective agencies expand their investigation of a child's possible Indian status beyond the child's parents."].)

In addition, Mother testified the paternal grandmother called her family to let them know Skyla was detained, and Father stated he sometimes stayed with Mother's sister. Even if Mother refused to provide contact information for her family, the Department could have asked the paternal family for any contact information they had for the maternal relatives.

We are mindful of the fact that often the Department caseworkers who provide services to the family are not the same

10

ones who conduct the ICWA investigations, and thus family information collected by one is not automatically known by the other. However, the fragmented nature of the duties of Department workers does not excuse the Department from satisfying its continuing duty to assess whether there are family members who may be reasonably available for an interview about a child's possible Indian ancestry.

The juvenile court's implicit finding that the Department engaged in an adequate and duly diligent ICWA inquiry is not supported by substantial evidence. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 605.)

## DISPOSITION

The order appointing a legal guardian for Skyla is conditionally affirmed. We remand the matter for the Department to make reasonable efforts to interview reasonably available maternal extended family members and to provide the results of its investigation to the juvenile court, so that the court may make further findings and orders as required under ICWA.

STONE, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

11